UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMERICAN HONDA MOTOR CO., INC.,

                              **Plaintiff,**

                v.                          7:10-CV-955
                                                (FJS/ATB)

**V.M. PAOLOZZI IMPORTS, INC.,**
**f/d/b/a DEALMAKER HONDA OF**
**WATERTOWN, and DEALMAKER**
**OF POTSDAM, LLC, f/d/b/a**
**DEALMAKER HONDA OF POTSDAM,**

                              **Defendants.**
_____

**APPEARANCES**                           **OF COUNSEL**

**HOGAN LOVELLS US LLP**             **JOHN J. SULLIVAN, ESQ.**
875 Third Avenue
New York, New York 10022
Attorneys for Plaintiff

**MCMAHON, KUBLICK & SMITH, P.C.**     **JAN S. KUBLICK, ESQ.**
500 South Salina Street, Suite 800
Syracuse, New York 13202
Attorneys for Defendants

**SCULLIN, Senior Judge**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff is seeking a preliminary injunction against Defendant V.M. Paolozzi Imports, Inc., f/d/b/a DealMaker Honda of Watertown ("Defendant Watertown Honda") and Defendant DealMaker of Potsdam, LLC, f/d/b/a DealMaker Honda of Potsdam ("Defendant Potsdam Honda") (collectively, "Defendants"). *See* Dkt. No. 1, Complaint, at ¶¶ 1-27.

Plaintiff alleges that Defendants failed to discontinue the use of and remove all Honda trademarks from their dealership properties (the "Dealership Properties") immediately following the termination of their respective Honda dealership agreements, as these agreements required. *See id.* at ¶¶ 12-13, 27, 33-40. Accordingly, Plaintiff seeks an order preliminarily enjoining Defendants from displaying Honda trademarks on their former Dealership Properties. In addition, Plaintiff requests leave to amend its complaint to add claims against Defendants with respect to alleged breaches of sublease agreements and amounts owed on unpaid balance accounts.

## II. BACKGROUND

Until June 30, 2010, Defendants were authorized Honda dealers pursuant to Honda Automobile Dealer Sales and Service Agreements entered into on September 14, 2004 (the "Watertown Dealer Agreement") and June 21, 2008 (the "Potsdam Dealer Agreement") (collectively, the "Dealer Agreements"). *See* Complaint at ¶¶ 12-13. Based on the purported breaches of their respective Dealer Agreements, Plaintiff served each Defendant with a notice of termination on May 26, 2010. *See id.* at ¶ 22. Both of the Dealer Agreements terminated on

June 30, 2010. *See id.* at ¶ 24.

Article 16.5 of the Dealer Agreements, entitled "Trademark Removal Obligations," provides, in pertinent part,

> upon the termination of the Dealer Agreement, Dealer shall immediately discontinue use of and remove all Honda Trademarks from the Dealership Premises, the Authorized Location and any and all advertisements by the Dealer . . . . Dealer's obligations . . . shall survive the termination of the Dealer Agreement . . . .

*See id.* at ¶ 25.

Article 21.3 of the Dealer Agreements further provides that,

> [i]n addition to the requirements of Article 16, not later than the effective date of the termination of the Dealer Agreement, Dealer will, at its sole expense, discontinue any and all uses of any Honda Trademarks and any words, symbols and marks which are confusingly similar thereto; will remove all signs bearing any Honda Trademark; and will destroy all stationery, repair orders, and advertising and solicitation materials, and all other printed matter bearing any Honda Trademark or referring directly or indirectly to American Honda or Honda Products in any way which might make it appear to members of the public that Dealer is still an authorized Dealer. The foregoing will include, but not be limited to, discontinuing the use of any Honda Trademark as part of Dealer's business and corporate name.

*See id.* at ¶ 26.

Plaintiff alleges that Defendant Watertown Honda continues to remain open for business as a vehicle repair shop using the name "DealMaker Honda of Watertown" and that Defendant Potsdam Honda is no longer open for business.[1]  *See id.* at ¶¶ 28-29. Plaintiff further alleges that both Dealership Properties have not removed, and continue to display, the same Honda

---

[1] Defendants also state that Defendant Potsdam Honda is currently closed down. *See* Dkt. No. 23.

trademarks on their properties that they displayed when they were authorized Honda dealers, including a monument sign displaying the Honda trademark and stylized "H" trademark, a "fascia sign" displaying the Honda trademark, and various trade dress elements used to identify authorized Honda dealerships. *See id.*

In addition, Plaintiff alleges that Defendants continue to maintain a website under the domain name www.dealmakerusa.com, which gives the impression to users that Defendants are currently in business as Honda dealers.[2] *See id.* at ¶ 30. Plaintiff also alleges that Defendants continue to maintain a billboard sign near Exit 46 on I-81 that displays the Honda trademark and stylized "H" trademark and advises the public that both Defendants are currently doing business as Honda dealers.[3] *See id.* at ¶ 31.

Defendants' attorney submitted a letter brief in response to the instant motion.[4] *See* Dkt. No. 21, at 1. In that letter, Defendants state that they have taken down the website and any "subpages" for both dealerships. *See id.* Defendants further contend that, "to [their] knowledge," all of the offsite billboard advertising has been removed. *See id.* In sum, Defendants' attorney states the following:

> My clients do not have the funds to undertake the removal of those
> signs. The signs however, are located on real property leased by

---

[2] As of this date, it appears that the web address has been taken down.

[3] Plaintiff also contends that each Defendant has failed to return one large Honda sign that they subleased from Plaintiff as required under their respective sublease agreements. *See* Dkt. No. 17, Plaintiff's Memorandum of Law, at 8.

[4] Defendants have failed to respond to Plaintiff's motion in accordance with Local Rule 7.1 and the time for doing so has now expired. *See* N.D.N.Y. L.R. § 7.1(b). However, in the interest of judicial efficiency and because the evidence in this case is not voluminous, the Court has performed an independent review of the entire record.

>        the Dealership entities [, Defendant Watertown Honda and
>        Defendant Potsdam Honda]. The Landlords are Onondaga
>        Development, LLC (Watertown) and Prime, LLC (Potsdam). The
>        Landlord entities are owned or controlled by one of the two
>        individual owners of the dealerships. However, each of the
>        Landlord entities has a bank mortgage on the real property. The
>        Dealership Defendants will obtain and provide permission from the
>        Landlord entities. If Plaintiff arranges for the removal of the signs,
>        it is respectfully requested that Plaintiff or its contractor provide
>        insurance and adequate indemnity to the Dealership and the
>        Landlord in the event an accident occurs during the removal.

*See id.* at 1-2.

On February 10, 2011, Plaintiff supplemented its motion with a Letter Brief, in reply to Defendants' Letter Brief, either (1) in opposition to Defendants' request that the Court consider their February 9, 2011 Letter Brief or (2) as a reply to Defendants' Letter Brief. *See* Dkt. No. 22, at 1.[5] In its letter, Plaintiff points out that Defendants failed to file opposition papers (due on January 25, 2011), as required by rules of the Court, and further argues that "Defendants' unsupported pleas of financial inability to comply with their contractual and trademark law obligations should not be considered. Defendants have not filed for bankruptcy protection and appear to have ample resources to prosecute lawsuits." *See id.* at 1-2. Further, Plaintiff states that Defendants have failed to remove the signage even after Magistrate Judge Baxter urged them to do so at the conference held on December 15, 2010. *See id.* at 2.

As stated, currently before the Court is Plaintiff's motion for a preliminary injunction and for leave to amend its complaint.

---

[5] On February 16, 2011, the Court issued an Order, in which it stated that it would consider all letter briefs that the parties had filed, *see* Dkt. Nos. 21-23, to the extent that they were relevant to Plaintiff's request for a preliminary injunction and for leave to amend. *See* Text Order dated February 16, 2011. The Court further advised all parties that they were not to file any additional papers relating to the pending motion without leave of the Court. *See id.*

## III. DISCUSSION

A.     **Plaintiff's motion for a preliminary injunction**

"A preliminary injunction should be granted where the moving party demonstrates (1) irreparable harm and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in the moving party's favor." *Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 41 (2d Cir. 1986) (citations omitted).

A party seeking a mandatory injunction, not merely a return to the status quo, "must show a 'clear' or 'substantial' likelihood of success" on the merits. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (quotation omitted). Here, because it requests certain affirmative actions, such as directing Defendants to take down and return any and all items bearing Honda's name and marks, Plaintiff must meet the somewhat more demanding requirement by showing a clear or substantial likelihood of success on the merits.

### *1. Clear or substantial likelihood of success on the merits*

Plaintiff's complaint sets forth six claims for relief against Defendants: (1) trademark infringement pursuant to section 32(a) of the Lanham Act (15 U.S.C. § 1114(a)); (2) trademark infringement, false designation of origin, and unfair competition pursuant to section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (3) federal unfair competition comprising false and misleading statements of fact pursuant to section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (4) trademark dilution pursuant to section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); (5) common law trademark infringement, unfair competition, and misappropriation of Plaintiff's

goodwill under New York State law; and (6) breach of contract.

To determine Plaintiff's likelihood of success on the merits, the Court must consider each of Plaintiff's claims.

### *a. Lanham Act §§ 32 and 43(a), claims 1-3*

To prevail on a trademark infringement claim under either section 32 or 43(a) of the Lanham Act, a plaintiff must demonstrate that (1) it is the owner of a valid trademark and that (2) the defendants used the trademark in commerce without consent in a way that is likely to cause consumer confusion. *See Church & Dwight Co., Inc. v. Kaloti Enters. of Michigan, L.L.C.*, 697 F. Supp. 2d 287, 290-91 (E.D.N.Y. 2009) (citing *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003)).

In this case, Plaintiff has clearly satisfied the first prong of its trademark infringement claim under sections 32 and 43(a) of the Lanham Act because Plaintiff is the undisputed owner of valid and protectible trademarks. *See, e.g.*, *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999).

In considering the second prong, the likelihood of confusion, courts in this Circuit generally look to the non-exclusive factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961): the strength of the plaintiff's marks, the similarity of the plaintiff's and the defendant's marks, the competitive proximity of the products sold under the marks, the likelihood that the plaintiff will "bridge the gap" and offer a product of the type that the defendants offer, actual consumer confusion, the defendant's good or bad faith, the quality of the defendant's product, and the sophistication of the consumers. *See id.* at 495.

In this case, the Court need not go through an in-depth analysis of each of the *Polaroid* factors. Indeed, "'[w]hen an ex-licensee continues to use a mark after its license expires, likelihood of confusion is established as a matter of law.'" *Lee Myles Auto Grp., LLC v. Fiorillo*, No. 10 Civ. 6267(PKC), 2010 WL 3466687, *3 (S.D.N.Y. Aug. 25, 2010) (quotation omitted). Here, the Dealer Agreements that authorized Defendants to use Honda marks terminated on June 30, 2010; thereafter, Defendants were required to discontinue the use of all Honda marks and to remove and return all Honda signs to Plaintiff. Defendants continue to display Honda marks and Honda signs on the Dealership Properties, which are no longer authorized Honda dealerships. It is, therefore, likely that consumer confusion will result regarding whether or not Defendants are authorized Honda dealers. Accordingly, the Court finds that Plaintiff is substantially likely to succeed on the merits of its unrefuted trademark infringement and unfair competition claims arising from Defendants' continued use of Honda marks.

### b. Lanham Act § 43(c), claim 4

Section 43(c) of the Lanham Act states, in pertinent part, that

> the owner of a famous mark that is distinctive, inherently or
> through acquired distinctiveness, shall be entitled to an injunction
> against another person who, at any time after the owner's mark has
> become famous, commences use of a mark or trade name in
> commerce that is likely to cause dilution by blurring or dilution by
> tarnishment of the famous mark, regardless of the presence or
> absence of actual or likely confusion, of competition, or of actual
> economic injury.

15 U.S.C. § 1125(c). To prevail on this claim, Plaintiff must establish that (1) its mark is famous; (2) Defendants are making use of the mark in commerce; (3) Defendants' use of the mark began after Plaintiff's mark became famous; and (4) a likelihood of dilution. *See New York*

*City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 321 (S.D.N.Y. 2010) (citing *Burberry Ltd. and Burberry USA v. Designers Imports, Inc.*, No. 07 Civ. 3997(PAC), 2010 WL 199906, at *7 (S.D.N.Y. Jan. 19, 2010)).

  First, it is undisputed that the Honda name and mark are "famous" for purposes of the statute. Second, Defendants are making use of the mark in commerce because they operate (or operated) car dealerships that display the Honda mark on the former Dealership Properties. Third, Defendants' use of the mark began long after the Honda mark became famous. Fourth, as to the likelihood of dilution, this case does not involve the "blurring" between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark; but, rather, it involves "dilution by tarnishment," which is the "'association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.'" *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 609-10 (S.D.N.Y. 2007) (quoting [15 U.S.C.] § 1125(c)(2)(C)). Given the signage and other Honda marks on the Dealership Properties, consumers may be misled into visiting the premises to shop for Honda vehicles or products because of Defendants' misrepresentation that they are still operating as Honda dealers. When consumers discover that Defendants are not, in fact, Honda dealers, Honda may suffer a negative association as a result of Defendants' misleading use of the Honda marks.

  Therefore, the Court concludes that Plaintiff has demonstrated that it is substantially likely to succeed on its claim of dilution by tarnishment pursuant to section 43(c) of the Lanham Act.

### *c. New York State common law claims, claim 5 — trademark infringement, unfair competition, and misappropriation of Plaintiff's goodwill*

The elements necessary to prevail on a common law cause of action for trademark infringement and unfair competition closely mirror those under the Lanham Act. *See ESPN, Inc. v. Quicksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008) (citation omitted). The analysis for a common law trademark infringement claim is identical to a federal trademark infringement claim brought under the Lanham Act. *See Birmingham v. Mizuno USA, Inc.*, No. 5:09-CV-0566, 2011 WL 1299356, *19 (N.D.N.Y. Mar. 31, 2011) (citations omitted). Therefore, with regard to Plaintiff's common law trademark infringement claim, for the reasons discussed above, the Court finds that Plaintiff is substantially likely to succeed on the merits because it has sufficiently demonstrated ownership of a valid and protectible mark and a likelihood of consumer confusion.

Unlike an unfair competition claim brought under the Lanham Act, to maintain a common law unfair competition claim, a plaintiff must also show some degree of "bad faith" misappropriation of the protected marks that creates a likelihood of consumer confusion. *See id.* (footnote omitted); *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980). Here, Plaintiff contends that Defendants are acting in bad faith by misrepresenting to the Court that they are unable to take down the Honda signs on their Dealership Properties. Plaintiff asserts that "Defendants' counsel admitted at the conference with Magistrate Judge Baxter on December 15, 2010, that the properties are owned by entities controlled by P.J. Simao, who is the controlling owner of [Defendant] Watertown [Honda] and [Defendant] Potsdam [Honda]." *See* Dkt. No. 17, Plaintiff's Memorandum of Law, at 15. In addition, Plaintiff has shown that Defendants willfully continued to display Honda marks after the Dealer Agreements and

Sublease Agreements were unambiguously terminated and notwithstanding multiple cease-and-desist requests.

Therefore, given the uncontested facts presented at this stage in the litigation, the Court concludes that Plaintiff is substantially likely to prevail on the merits of its common law claims for trademark infringement and unfair competition.[6]

### d. Breach of contract, claim 6

The plain terms of the Dealer Agreements provide, in part, that (1) Defendants' license to use Honda marks ends when the Dealer Agreements terminate; and (2) Defendants must immediately discontinue the use of all Honda marks and remove all Honda signage upon termination. *See* Complaint at ¶¶ 22-29. Thus, the evidence that Plaintiff has submitted tends to support its claims that Defendants violated, and continue to violate, various terms of the Dealer Agreements and Sublease Agreements. Therefore, and because Defendants offer no evidence to the contrary, the Court finds that Plaintiff is also substantially likely to succeed on the merits of its breach-of-contract claim.

### 2. Irreparable harm

In addition to establishing a substantial likelihood of success on the merits, Plaintiff must also demonstrate that it will suffer irreparable harm in the absence of injunctive relief. *See Church of Scientology Int'l*, 794 F.2d at 41. In cases involving claims of trademark infringement under the Lanham Act, particularly in a licensor-licensee context, "the reasons for issuing a

---

[6] Plaintiff's New York common law claim for "misappropriation of Plaintiff's goodwill" does not appear to be an independent cause of action; rather, it is another aspect of Plaintiff's common law infringement and unfair competition claims.

preliminary injunction . . . are more compelling than in the ordinary case. When in the licensing context unlawful use and consumer confusion have been demonstrated, a finding of irreparable harm is automatic." *Id.* at 42.

As stated, the unambiguous Dealer Agreements and sublease agreements state that, upon their termination, Defendants are obligated to discontinue using Honda's name and marks and disassemble and return the two subleased signs. As of June 30, 2010, Defendants are no longer functioning as authorized Honda dealers; as such, their continued display of Honda trademarks constitutes an infringing use that is likely to confuse consumers and damage customer goodwill. Since Plaintiff has demonstrated a likelihood of consumer confusion and Defendants have offered no facts to rebut the presumption of irreparable harm, the Court concludes that Plaintiff will suffer irreparable harm if the Court does not grant its motion for preliminary injunctive relief.

**B.     Scope of the preliminary injunction**

Plaintiff seeks multiple forms of injunctive relief in its motion; specifically, Plaintiff requests that this Court order (1) Defendant Watertown Honda to take down a monument sign displaying the Honda trademark and stylized "H" trademark, a "fascia sign" displaying the Honda trademark, and a "Service Customer Parking" sign displaying the stylized "H" trademark; (2) Defendant Potsdam Honda to take down a monument sign displaying the Honda trademark and stylized "H" trademark, a "fascia sign" displaying the Honda trademark, and trade dress design elements used to identify authorized Honda dealerships, including the trade dress Honda barrel entrance design element displaying the stylized "H" trademark, the trade dress Honda Blue

"wave" design element, and the trade dress Honda branded Sales Consultation endpost design element; (3) both Defendants to take down a website and any "subpages" under domain name www.dealmakerusa.com; (4) both Defendants to take down a billboard sign near Exit 46 on I-81; and (5) both Defendants to take down and return two pylon signs that they subleased from Plaintiff.

Nearly eleven months have passed since Plaintiff filed the instant motion on January 10, 2011, and Defendants have apparently complied with some aspects of the relief that Plaintiff seeks. A preliminary injunction is an equitable remedy that "'must be framed in such a way as to strike a delicate balance between competing interests. By necessity, the scope of the injunction must be drawn by reference to the facts of the individual case, reflecting a careful balancing of the equities.'" *Sunward Elecs., Inc.*, 362 F.3d at 26 (quotation and other citation omitted). Therefore, although the Court grants Plaintiff's motion for a preliminary injunction, the Court will hold a status conference to determine the appropriate scope of that relief. In addition, at that conference, the Court will also address Plaintiff's request for an order of seizure of the subleased signs pursuant to Rule 64 of the Federal Rules of Civil Procedure and Section 7102 of the New York Civil Practice Law and Rules because this, too, would constitute injunctive relief that may no longer be necessary.

### C.    Leave to amend

Plaintiff requests leave to amend its complaint to add claims arising out of Defendants' breaches of their respective sublease agreements and Defendants' failure to pay their respective open account balances to Plaintiff. *See* Dkt. No. 17, Plaintiff's Memorandum of Law, at 16.

Plaintiff has supplied the Court with the proposed amended complaint, as well as a redlined version showing the changes to the complaint. *See* Dkt. No. 18, Exhs. 14-15 attached thereto. Since Defendants "do not oppose the Plaintiff's Motion to amend the Complaint," *see* Dkt. No. 21, and Defendants will not be prejudiced given the early stage of the litigation, the Court grants Plaintiff leave to amend its complaint.

### IV. CONCLUSION

Accordingly, having reviewed the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for a preliminary injunction and for leave to amend its complaint is **GRANTED**; and the Court further

**ORDERS** that Plaintiff shall file its amended complaint within **ten days** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that counsel shall appear for a status conference to address the scope of the injunctive relief and Plaintiff's request for an order of seizure on **January 5, 2012**, at **9:30 a.m.** in Syracuse, New York.

**IT IS SO ORDERED.**

Dated: December 13, 2011
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge