UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMERICAN HONDA MOTOR CO., INC.,

                            **Plaintiff,**

                    v.                            7:10-CV-955
                                                  (FJS/ATB)

V.M. PAOLOZZI IMPORTS, INC.,
f/d/b/a DEALMAKER HONDA OF
WATERTOWN, and DEALMAKER
OF POTSDAM, LLC, f/d/b/a
DEALMAKER HONDA OF POTSDAM,

                            **Defendants.**
_____

**APPEARANCES**                                 **OF COUNSEL**

**HOGAN LOVELLS US LLP**            **JOHN J. SULLIVAN, ESQ.**
875 Third Avenue
New York, New York 10022
Attorneys for Plaintiff

**MCMAHON, KUBLICK & SMITH, P.C.**    **JAN S. KUBLICK, ESQ.**
500 South Salina Street, Suite 800
Syracuse, New York 13202
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Currently before the Court is Plaintiff's motion to hold Defendants in contempt and for sanctions and attorney's fees.

## II. BACKGROUND

Plaintiff American Honda Motor Co., Inc. commenced this action on August 6, 2010, to obtain, among other things, injunctive relief preventing Defendant V.M. Paolozzi Imports, Inc. f/d/b/a DealMaker Honda of Watertown ("Defendant Watertown") and Defendant DealMaker of Potsdam, LLC d/b/a DealMaker of Potsdam ("Defendant Potsdam") from continuing to use and display Honda trademarks and trade dress design elements on their former dealership properties. *See* Dkt. No. 1. On January 10, 2011, Plaintiff filed a motion for a preliminary injunction against Defendants. *See* Dkt. No. 16. In a Memorandum-Decision and Order dated December 13, 2011, the Court granted that motion, *see* Dkt. No. 26, and, on February 13, 2012, enjoined Defendants from displaying Honda trademarks and trade designs on their former dealership properties, *see* Dkt. No. 37. Plaintiff asserts that Defendants continue to display Honda marks on their former dealership properties in violation of the Court's Order.

## III. DISCUSSION

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citations omitted). A court may hold a party in civil contempt "'if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Cold Stone Creamery, Inc. v. Gorman*, 361 F. App'x 282, 287 (2d Cir. 2010) (quotation omitted). Furthermore, the moving party need not establish that the violation was

willful. *See id.* (quotation omitted).[1]

This Court's Order dated February 13, 2012, required Defendants to (1) remove all Honda signage and trade dress design elements from their former dealership properties by February 27, 2012, and (2) destroy all of the signs referred to in the Order and "provide proof of such destruction to the Court and opposing counsel by filing and serving an affidavit or other self-authenticating document" by March 5, 2012. *See* Dkt. No. 37. Defendants have violated this Order by (1) failing to comply with Court-Ordered deadlines; (2) by failing to comply with the letter of the Order in that, although they have removed Honda panels displaying the Honda trademark and the stylized "H" trademark, they have not "destroy[ed]" sign displays at both locations bearing Honda's blue and white color scheme and the identifiable shape of a Honda sign; and Defendants have not "provide[d] proof of such destruction"; and (3) by failing to comply with the Court's Order to "cause to be removed from the premises at 42 Maple Street, Potsdam, New York 13676 . . . the trade dress design elements used to identify authorized Honda dealerships, including the trade dress Honda barrel entrance design element . . . [and] the trade dress Honda [b]lue 'wave' design element . . . ." *See id.*[2]

---

[1] A district court's civil contempt order is generally not appealable because it is neither a final order nor an injunctive order. *See Cold Stone Creamery, Inc.*, 361 F. App'x at 287 n.1 (citation omitted). "However, 'under . . . particular circumstances' where the district court has entered monetary judgments as sanctions for civil contempt, [the Second Circuit has] allowed appeals from contempt orders." *Id.* (citation omitted).

[2] Defendants have provided photographic evidence of such non-compliance. *See* Dkt. No. 53, Exhs. "A" through "G" attached thereto. Although the photographs were taken on March 20, 2012, and Philip J. Simao, Defendants' managing member and majority owner, thereafter submitted an affidavit stating that he personally inspected both dealership properties on April 10, 2012, and April 12, 2012, Simao is silent regarding these violations of the Court's Order. *See* Dkt. No. 55.

(continued...)

Defendants responded to Plaintiff's motion by submitting two affidavits — one from Defendants' counsel, Jan S. Kublick, and one from Philip J. Simao, Defendants' managing member and majority owner.  In his affidavit, Jan S. Kublick stated that, "[w]ith the exception of the modification of the building in Potsdam, the ordered work has been accomplished, including the removal of the pylon sign panels, the monument sign panels and the lettering on the building.  This work was substantially begun before March 9th and finished by March 26th."  *See* Dkt. No. 51, Attorney Affidavit of Jan S. Kublick, Esq. dated March 27, 2012, at ¶ 4.  Kublick asserted that Simao's affidavit "makes clear that there was no willful or deliberate delay or refusal" on the part of Defendants to comply with the Court's Order.  *See id.* at ¶ 6.  As to the exterior structural work required at the Potsdam property, Kublick stated that this cannot be accomplished without the approval of Protective Life Insurance Company, the holder of the Mortgage with a lien on the property; and, "[b]ased on [his] discussions with Protective, permission is at best uncertain, and would be expensive, difficult, and time consuming to seek, and would involve a contractor or architect preparing plans and estimates, a review by an appraiser, and then review by a committee."  *See id.* at ¶¶ 7-8.

In his affidavit, Simao asserted that "Defendants have no cash, no income, and no

---

$^{2}$(...continued)
Furthermore, although not specifically enumerated as one of Defendants' continued violations of this Court's Order because such violations are less clearly evidenced in Defendants' photographs, it appears that Defendants have not removed Honda branded Sales Consultation endposts and a service banner bearing the Honda trademark and the stylized "H" trademark, which remain visible through the windows of the building at the Potsdam location.  *See* Dkt. No. 53, Exhs. "F," "G".  In his affidavit, Simao stated that "there is nothing inside the building visible to the public passing by on the sidewalk or public road" and that the no-trespassing signs have been posted on the property "and so the public cannot, without trespassing[,] approach the Potsdam building."  *See* Dkt. No. 55 at ¶¶ 5-6.  This, too, would constitute a violation of this Court's Order if these items do, in fact, remain in public view.

unencumbered assets, and have not for several years, since Plaintiff terminated Defendants' dealerships, and Plaintiff's financing subsidiary seized cars and commenced an action for money damages." *See* Dkt. No. 51-1, Affidavit of Philip J. Simao dated March 26, 2012, at ¶ 2. Simao stated that he personally loaned money to Defendants to engage Atomic Sign Works, LLC to perform the work the Court ordered; and, as of March 26, 2012, "signs and lettering have been removed from both stores, and the unanticipated outline of the word HONDA has been erased." *See id.* at ¶¶ 5, 10-11. However, Simao further stated that Defendants cannot modify the exterior of the building on the Potsdam property to remove Honda design marks because the building "is owned by Prime, LLC of which [he is] the managing member. The building was leased to [Defendant Potsdam], and the Lease was approved by Plaintiff," and Protective Life Insurance Company now holds a mortgage for more than $5,000,000 on the building. *See id.* at ¶¶ 14-15. As such, even if Defendants had the money to do so, Simao claimed that Defendants "cannot modify the building without the permission of Prime, LLC, and Prime cannot do so without the permission of Protective. To do so without Protective's permission would be a breach under the Mortgage documents." *See id.* at ¶ 16.

Most recently, on April 12, 2012, Simao submitted a second affidavit in which he added that he "personally inspected both the Potsdam and the Watertown sites on Tuesday April 10, 2010, and the Watertown site again on April 12, 2012." *See* Dkt. No. 55 at ¶ 2. The only other additional information to which Simao averred in this six-paragraph affidavit was that, with regard to "the interior of the landlord Prime LLC's building in Potsdam, there is nothing inside the building visible to the public passing by on the sidewalk or public road" and "[t]he Potsdam site has[] been and continues to be posted against trespassing, and so the public cannot, without

-5-

trespassing[,] approach the Potsdam building." *See id.* at ¶¶ 5-6.

Under these circumstances, the Court finds that it can and should hold Defendants in civil contempt because this Court's Order was clear and unambiguous, proof of noncompliance is clear and largely unrefuted, and Defendants have not diligently attempted to comply in a reasonable manner. *See Cold Stone Creamery, Inc.*, 361 F. App'x at 287 (quotation omitted).

With regard to whether Defendants have made a diligent attempt to comply with the Order, their primary justification for noncompliance is their alleged lack of funds, their alleged lack of landlord approval at Potsdam to make building design alterations, and Protective Life Insurance Company's mortgage on the Potsdam building. Regarding their alleged lack of funds, Defendants have not filed for bankruptcy and they have submitted *nothing* to the Court beyond Simao's conclusory assertions to support their alleged financial inability to comply fully with the Court's Order. *See Capital Servs. of New York, Inc. v. E-Poxy Indus., Inc.*, No. 1:00 CV 873, 2005 WL 2033494, *7 (N.D.N.Y. Aug. 17, 2005) (granting the plaintiff's request for sanctions due to the defendants' failure to pay their contempt judgment because the contemnors had not offered sufficient documentation supporting their alleged financial inability to comply where they submitted "one tax return, one bill of sale, and one transcript of judgment"); *see also Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (holding that the contemnor failed to demonstrate an inability to pay where he failed to provide any tax returns or other documentation supporting his assertions because "[t]he alleged contemnor bears the burden of producing evidence of his inability to comply" and must "establish his inability clearly, plainly, and unmistakably" (citations omitted)).

Furthermore, regarding Defendants' excuse that they cannot modify the Potsdam building

without the permission of Prime, LLC, which Prime cannot do without the permission of Protective Life Insurance Company, Defendants have likewise submitted nothing evidencing their inability to comply with the Court's Order. In addition, Simao is the "managing member" of Prime, LLC.

Since the Court's Order is clear, proof of Defendants' noncompliance is clear, and Defendants have not diligently attempted to comply with the Order in a reasonable manner, the Court will issue a show cause order as to why it should not hold Defendants in civil contempt and why it should not impose *per diem* sanctions on Defendants that would continue to accrue daily until Defendants have complied in full with this Court's Order dated February 13, 2012.[3] *See Perfect Fit Indus., Inc. v. ACME Quilting Co., Inc.*, 673 F.2d 53, 57 (2d Cir. 1982), (affirming contempt sanction of $5,000 per day for violation of the court's injunction regarding trade dress infringement, reasoning that, when the purpose of the sanction imposed on a party held in civil contempt is coercive, "the district court has broad discretion to design a remedy that will bring about compliance" (citations omitted)). Here, the purpose of the contempt order and sanction would be coercive as it does not appear Defendants will otherwise comply with the Court's Order. When imposing sanctions, a court should consider several factors, including (1) the character and magnitude of the harm threatened by the party's continued noncompliance, (2) the efficacy of the sanction in bringing about compliance, and (3) the contemnor's ability to pay.

---

[3] The Court shall issue a show cause order, rather than order contempt and impose sanctions outright, in an abundance of caution to ensure that Defendants receive notice and an opportunity to be heard. *See Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 934-35 (2d Cir. 1992), *overruled in part on other grounds*, *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000)); *Ahava (USA), Inc. v. J.W.G., Ltd.*, 279 F. Supp. 2d 219, 221 (S.D.N.Y. 2003) (quotation omitted).

*See id.*

Finally, the Court grants Plaintiff's motion insofar as it seeks attorney's fees and costs it has incurred in bringing this motion. *See Capital Servs. of New York, Inc.*, 2005 WL 2033494, at *7.

### IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that, within **FOURTEEN DAYS** of the date of this Memorandum-Decision and Order, Defendants shall file and serve affidavits and supporting documentation to **SHOW CAUSE** why the Court should not hold them in civil contempt and why it should not impose *per diem* sanctions that would continue to accrue daily until they have complied in full with this Court's Order dated February 13, 2012. Plaintiff may file and serve a response to Defendants' submission within **TEN DAYS** of the date of Defendants' filing of their submissions; and the Court further

**ORDERS** that, no later than **FOURTEEN DAYS** from the date of this Memorandum-Decision and Order, Plaintiff shall file and serve an affidavit and supporting documentation setting forth the reasonable attorney's fees and costs it has incurred in bringing this motion.[4]

**IT IS SO ORDERED.**

Dated: September 1, 2012
      Syracuse, New York

                                    Frederick J. Scullin, Jr.
                                    Senior United States District Court Judge

---

[4] This submission should include attorneys' billing statements, including the date, amount of time expended, and the nature of the work performed.