UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMERICAN HONDA MOTOR COMPANY, INC.,

                **Plaintiff and Counter-Defendant,**

        v.                                  7:10-CV-955
                                                (FJS/ATB)

V.M. PAOLOZZI IMPORTS, INC., d/b/a/ Dealmaker
Honda of Watertown; DEALMAKER OF POTSDAM,
LLC, d/b/a/ DealMaker Honda of Potsdam,

                **Defendants and Counter-Claimants.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**HOGAN LOVELLS US LLP**             **JOHN J. SULLIVAN, ESQ.**
875 Third Avenue
New York, New York 13440
Attorneys for Plaintiff

**MCMAHON, KUBLICK & SMITH, PC**     **JAN S. KUBLICK, ESQ.**
500 South Salina Street
Suite 816
Syracuse, New York
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Currently before the Court are (1) Plaintiff's motion to strike Defendants' counterclaims, *see* Dkt. No. 40; and (2) Plaintiff's motion to hold Defendants in contempt and impose sanctions, *see* Dkt. No. 48.

## II. BACKGROUND

A.   **Introduction**

Until June 30, 2010, Defendants were authorized Honda dealers pursuant to Honda Automobile Dealer Sales and Service Agreements entered into on September 14, 2004, and June 21, 2008 (collectively, the "Dealer Agreements"). *See* Dkt. No. 27 at ¶¶ 12-13. Plaintiff terminated both Dealer Agreements on June 30, 2010, because of Defendants' purported breaches of the agreements. *See id.* at ¶ 24.

On August 6, 2010, Plaintiff brought an action against Defendants, alleging trademark infringement and breach-of-contract claims. *See* Dkt. No. 1. On January 10, 2011, Plaintiff moved for a preliminary injunction to prevent Defendants from displaying on their properties Honda trademarks and trade dress design elements as they had done when they were authorized Honda dealers. *See id.* at ¶¶ 28-29. Plaintiff further moved for leave to amend the complaint to add claims relating to Defendants' alleged breaches of sublease agreements for Honda signs and failure to pay their account balances. *See* Dkt. No. 16 at 1-2.

In a Memorandum-Decision and Order dated December 13, 2011, the Court granted both motions. *See* Dkt. No. 26. On December 14, 2011, Plaintiff filed its amended complaint. *See* Dkt. No. 27. Defendants filed an amended answer on January 19, 2012, asserting six additional counterclaims. *See* Dkt. No. 33. On February 13, 2012, the Court issued an Order enjoining Defendants from displaying Honda trademarks and trade designs on their former dealership properties. *See* Dkt. No. 37

B.   **Defendants' six counterclaims**

In their amended answer, Defendants asserted, for the first time, six new counterclaims. *See* Dkt. No. 33. Five of the counterclaims alleged that Plaintiff had breached its implied

contractual duty to exercise good faith and deal fairly with Defendants. *See id.* According to Defendants, Plaintiff had breached its implied duty of good faith and fair dealing by (1) forcing Defendant Potsdam to open its Honda dealership by November 17, 2008, despite the unprecedented recession in the automotive industry at that time; (2) promising to assist Defendants in the sale of the Watertown and Potsdam dealerships, which, in turn, caused Defendant Watertown to cease its efforts to sell its dealership to an undisclosed purchaser; (3) refusing to approve the sale of the dealerships to Carbone Auto Group, LLC, an existing qualified Honda dealer; (4) colluding with American Honda Finance Corporation ("Honda Finance"), an affiliate of Plaintiff, to prevent a "workout agreement" between Defendants and Honda Finance in 2009; and (5) colluding with Honda Finance to terminate the Watertown and Potsdam dealerships in a manner that denied Defendants any economic benefit therefrom. *See* Dkt. No. 33 at ¶¶ 102, 105, 108, 114, 117. The remaining counterclaim alleged that Plaintiff had tortiously interfered with Defendant Watertown's agreement to sell its dealership to an undisclosed purchaser and, with knowledge of said sale, had dishonestly, unfairly and improperly induced Defendants to forego the sale. *See id.* at ¶ 111.

C.   **The Court's Order to Show Cause**

On March 12, 2012, Plaintiff filed a motion to hold Defendants in contempt and impose sanctions because they have continued to display Honda trademarks on their former dealership properties. *See* Dkt. No. 48. In a Memorandum-Decision and Order dated September 1, 2012, the Court granted Plaintiff's motion and ordered Defendants to show cause why the Court should not hold them in contempt and impose *per diem* sanctions until their full compliance with the Court's February 13, 2012 Order. *See* Dkt. No. 56 at 7-8. Additionally, the Court granted

Plaintiff's request for attorney's fees and costs incurred in bringing its motion and instructed Plaintiff to submit documents supporting its proposed attorney's fees and costs.  *See id.* at 8-9.

### III. DISCUSSION

**A.     Plaintiff's motion to strike the counterclaims**

Rule 16(b) of the Federal Rules of Civil Procedure provides that a court must issue a pretrial scheduling order that, among other things, limits the time to amend the pleadings.  *See* Fed. R. Civ. P. 16(b)(3)(A); *see also* N.D.N.Y. L.R. 16.1(e) (mirroring Rule 16(b)).  "By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 amendment, discussion of subsection (b))).  "Deadlines imposed under a Rule 16 scheduling order are not mere suggestive guideposts; they are meaningful deadlines established by the court, in consultation with the litigants, intended to insure that the ends of justice and the need for prompt and efficient adjudication of controversies are met."  *Syracuse Univ. v. Otis Elevator Co.*, No. 5:09-CV-0172, 2010 U.S. Dist. LEXIS 66396, *5-*6 (N.D.N.Y. July 1, 2010); *see also Kassim v. City of Schenectady*, 221 F.R.D. 363, 365 (N.D.N.Y. 2003) (stating that a scheduling order "'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril'" (quotation omitted)).

Moreover, Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *see* N.D.N.Y. L.R. 16.1(f) (stating that "[t]he Court shall strictly enforce any deadlines that it establishes in any case management order, and the Court shall not modify these, even upon stipulation of the parties, except upon a

showing of good cause"). To establish good cause, "'the moving party must, at a minimum, make a showing of diligence.'" *Murphy v. Snyder*, No. CV 10-1513, 2013 U.S. Dist. LEXIS 32997, *59 (E.D.N.Y. Mar. 8, 2013) (quotation and other citations omitted). "'Good cause requires a greater showing than excusable neglect'" and "may be established by 'demonstrating that reasonably unforeseeable events occurring after the entry of the scheduling order precluded compliance with the deadlines'" therein. *Syracuse Univ.*, 2010 U.S. Dist. LEXIS 66396, at *6-*7 (quotations omitted).

In this case, Plaintiff argues that the Court should strike Defendants' counterclaims because (1) the Uniform Pretrial Scheduling Order ("Scheduling Order") deadline of March 19, 2011, for amending the pleadings expired long before Defendants filed the amended answer on January 19, 2012; and (2) they have not shown good cause to excuse this delay. *See* Dkt. No. 15 at ¶ 5; Dkt. No. 40 at 1; Dkt. No. 41 at 1-2, 9. Although Defendants admit that the Scheduling Order deadline had expired when they filed the counterclaims, they argue that the counterclaims reflect facts unknown to them on or before the Scheduling Order deadline of March 9, 2011. *See id.* at ¶¶ 7-8, 11; Dkt. No. 49 at ¶ 4. Notwithstanding, Defendants also argue that they filed their amended answer within the timeframe for responding to the amended complaint. *See id.* at ¶ 3.

The Court grants Plaintiff's motion to strike the counterclaims because Defendants have not shown, as they must, that they diligently sought to comply with the Scheduling Order and, therefore, they lack the requisite good cause. As an initial matter, Defendants concede that the Scheduling Order deadline to amend had expired when they filed the counterclaims. *See* Dkt. No. 49 at ¶ 4. In such circumstances, Rule 16(b)(4) required Defendants to move to modify or extend the March 19, 2011 deadline in the Scheduling Order before filing the amended answer.

*See* Fed. R. Civ. P. 16(b)(4). Defendants, however, neither sought the Court's consent to modify the Scheduling Order nor to extend the deadline to file amended pleadings therein.

Additionally, Defendants fall short of demonstrating good cause to extend the deadline to permit their late amended answer. To show good cause, Defendants principally rely on the affidavit of Jan S. Kublick, Esq., Defendants' attorney, which avers that Philip J. Simao, President of Defendants ("Simao"), learned in late 2011 that Plaintiff was "actively discussing granting a franchise" to existing Honda dealers in other markets and that Carbone Auto Group ultimately purchased property in Watertown for a dealership. *See* Dkt. No. 49 at ¶ 7. Not only is this conclusory contention unpersuasive to demonstrate Defendants' diligence in complying with the Scheduling Order, but Defendants have advanced it in their attorney's affidavit, not in their memorandum of law. *Compare* Dkt. No. 49 *with* Dkt. No. 49-3. This violates Local Rule 7.1(a)(2)'s proscription against affidavits containing legal arguments. *See* N.D.N.Y. L.R. 7.1(a)(2) (stating that "[a]n affidavit must not contain legal arguments but must contain factual and procedural background that is relevant to the motion the affidavit supports"); *see also Oneida Indian Nation of N.Y. State v. Cnty. of Oneida*, 802 F. Supp. 2d 395, 424 n.24 (N.D.N.Y. 2011); *Topliff v. Wal-Mart Stores East LP*, No. 6:04-CV-0297, 2007 U.S. Dist. LEXIS 20533, *90 (N.D.N.Y. Mar. 22, 2007) (stating that, "to the extent that Plaintiff's counsel is attempting to present arguments in refutation of the arguments advanced by Defendant . . ., the place for those arguments is in Plaintiff's opposition memorandum of law" (citation omitted)). Finally, Defendants fail to claim, let alone demonstrate, that it was reasonably unforeseeable that Plaintiff would negotiate with Carbone Auto Group regarding the sale of the Watertown dealership after the Scheduling Order deadline. *See Syracuse Univ.*, 2010 U.S. Dist. LEXIS 66396, at *7 (citation omitted).

In an apparent attempt to show good cause, Defendants also allege that the counterclaims contained in the amended answer are based on facts unknown to them before the Scheduling Order deadline expired. *See* Dkt. No. 49 at ¶ 7-8, 11. The record, however, does not support this argument and does not establish good cause for Defendants' failure to comply with the Scheduling Order. In one of their counterclaims, Defendants allege that Plaintiff breached its implied duty of good faith and fair dealing by forcing Defendant Potsdam to open its dealership in 2008, despite the economic recession. *See* Dkt. No. 33 at ¶ 102. This allegation on its face establishes that Defendants knew about this counterclaim before the Scheduling Order deadline. In another counterclaim, Defendants allege that Plaintiff colluded with Honda Finance to prevent a settlement agreement between Defendants and Honda Finance. *See id.* at ¶ 105. Defendants, however, were aware of this claim because they raised it in a previous suit with Honda Finance. Consequently, Defendants have not shown good cause to excuse their late filing on this basis.

Moreover, Defendants admit that all of the "[c]ounterclaims are grounded on allegations that Plaintiff was aware of Defendants' financial difficulties, its negotiations with [Honda Finance], and that Defendants' only alternative was to remain open while negotiating to sell." *See* Dkt. No. 49 at ¶ 16. Defendants, however, knew these facts surrounding the counterclaims before the Scheduling Order deadline expired on March 9, 2011, and thus cannot demonstrate good cause. *See e.g.*, *Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*, No. 08 Civ. 3697, 2009 U.S. Dist. LEXIS 71608, *9-*10 (S.D.N.Y. July 31, 2009) (denying motion to amend answer filed seven months after scheduling order deadline where defendant was on notice of its proposed amendments at the time original answer was filed). In fact, in a letter to the Court dated February 9, 2011, Defendants' attorney wrote, "My clients do not have the funds to undertake the removal of those signs . . . . Due to the different ownership of the Landlords, and

7

especially the bank mortgages on the buildings, alterations of the buildings would not be within the power of the Defendants." *See* Dkt. No. 21 at 1-2.

Accordingly, the record in this case shows that Defendants were certainly aware of the facts giving rise to their counterclaims well before the Scheduling Order deadline. However, rather than assert these counterclaims in the original answer on September 30, 2010, or move to amend prior to the Scheduling Order deadline on March 9, 2011, Defendants waited until January 19, 2012, to assert these counterclaims. *See Parker*, 204 F.3d at 341 (finding no good cause where the plaintiff "had all the information necessary" to support the claim at the outset of the case). Since Defendants knew the facts surrounding the counterclaims before the Scheduling Order deadline expired, they cannot demonstrate good cause to excuse their late filing. *See Wilcox v. RBS Citizens, N.A.*, No. 3:08-CV-0571, 2009 U.S. Dist. LEXIS 54088, *11-*12 (N.D.N.Y. June 25, 2009) (finding that defendants "disclose[d] no circumstances that were not contemplated or could not reasonably have been foreseen by the parties at the time the schedule . . . was issued, at the time of the stipulated extension, or during the many conferences with the court").

Moreover, to the extent that Defendants argue that they properly filed their amended answer in response to the amended complaint, such an argument has no merit. Under Rule 15(a)(3) of the Federal Rules of Civil Procedure, Defendants had fourteen days after service of the amended complaint to file an amended answer. *See* Fed. R. Civ. P. 15(a)(3) (stating that "any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later"). Here, Defendants filed the amended answer on January 19, 2012, which is well outside the permitted fourteen-day window. *See* Dkt. No. 33. In any event, even assuming

8

Defendants timely filed the amended answer under Rule 15(a)(3), they were not permitted to include the counterclaims. *See Unigene Labs., Inc. v. Apotex, Inc.*, No. 06 CV 5571, 2010 U.S. Dist. LEXIS 67444, *15 (S.D.N.Y. July 6, 2010) (stating that, "'if an amended complaint does not change the scope or theory of a case, then the responsive pleading cannot add new theories either'" (quotation and footnote omitted)). Defendants' counterclaims clearly added new issues to the case that were not within the scope of the amended complaint. *See* Dkt. No. 33. As such, they are improper.

Accordingly, for the foregoing reasons, the Court grants Plaintiff's motion to strike the counterclaims from the amended answer.

**B.     Plaintiff's motion to hold Defendants in contempt and impose sanctions**

*1.  Contempt*

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citations omitted). A court may hold a party in civil contempt "'if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Cold Stone Creamery, Inc. v. Gorman*, 361 F. App'x 282, 287 (2d Cir. 2010) (quotation omitted). Furthermore, the moving party need not establish that the violation was willful. *See id.* (quotation omitted).

In this case, Defendants have failed to show cause why the Court should not hold them in contempt because the Order is unambiguous, Defendants' noncompliance is clear, and Defendants have not diligently attempted to comply with the Order in a reasonable manner.

Defendants assert that they removed, destroyed, and disposed of all Honda trademarks between March 8, 2012, and March 29, 2012, except for the Honda trademark "barrel and wave sign" on the exterior of the Potsdam dealership building. *See* Dkt. No. 57 at ¶¶ 3-6. Without offering new or persuasive evidence in support, Defendants allege the same "justifications" for not complying with the Order in full as they raised previously. *See id.* at ¶¶ 4-5. These justifications are (1) their alleged lack of funds, (2) their inability to make building design alterations to the Potsdam dealership building under their lease with Prime, LLC, and (3) their lack of consent from Protective Life Insurance Company to make material alterations as required by the mortgage on the Potsdam dealership. *See id.* These are the same justifications that the Court previously rejected. *See* Memorandum-Decision and Order dated September 1, 2012.

For instance, the Court continues to reject Defendants' justification that they lacked the funds necessary to comply with the Order because Defendants have neither filed for bankruptcy, nor offered sufficient documentation supporting their alleged financial inability to comply with the Order. *See* Dkt. No. 57 at ¶ 4; *see also Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (stating that "[t]he alleged contemnor bears the burden of producing evidence of this inability to comply" and must "establish his inability clearly, plainly, and unmistakably" (citation omitted)). To support this alleged justification, Defendants merely submit the affidavit of Dale E. Roberts, a licensed Certified Public Accountant and an employee of Defendants. *See* Dkt. No. 57-4. Roberts neglects to attest that Defendants are insolvent or lack assets against which they can borrow. *See id.* Rather, Roberts summarily alleges that Defendants have no money or cash liquidity, operated at an annual loss in 2010, and have not filed federal income tax returns since 2007. *See* Dkt. No. 57-4 at ¶¶ 2-4. Furthermore, Defendants have offered no financial documents to bolster Roberts' affidavit; and, therefore, the Court finds Defendants in contempt

on this ground. *See Capital Servs. of New York, Inc. v. E-Proxy Indus., Inc.*, No 1:00 CV 873, 2005 WL 2033494, *7 (N.D.N.Y. Aug. 17, 2005) (granting the plaintiff's request for sanctions due to the defendants' failure to pay their contempt judgment because the contemnors had not offered sufficient documentation supporting their alleged financial inability to comply where they submitted "one tax return, one bill of sale, and one transcript of judgment").

In short, on September 1, 2012, the Court issued "a show cause order, rather than order contempt and impose sanctions outright, in an abundance of caution to ensure that Defendants receive[d] notice and an opportunity to be heard." *See* Dkt. No. 56 at 7 n.3 (citations omitted). Defendants have squandered their opportunity to show cause why the Court should not hold them in contempt and impose sanctions.

### 2. Per diem sanctions

"[A] sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 673 F.2d 53, 56 (2d Cir. 1982) (citations omitted); *see also Utica Coll. v. Gordon*, No. 6:08-CV-88, 2009 U.S. Dist. LEXIS 96414, *6 (N.D.N.Y. Oct. 16, 2009) (stating, "[i]f found in contempt, monetary sanctions may be awarded to either compensate the moving party for harm resulting from the noncompliance or to deter further disobedience" (citation omitted)). Where, as here, "the purpose is coercive, the district court has broad discretion to design a remedy that will bring about compliance." *Perfect Fit*, 673 F.2d at 57 (citations omitted). When imposing sanctions, a court should consider several factors, including (1) the character and magnitude of the harm

threatened by the party's continued noncompliance, (2) the efficacy of the sanction in bringing about compliance, and (3) the contemnor's ability to pay. *See id.* "Ultimately, however, the overriding consideration is whether the coercive fine was reasonably set in relation to the facts and was not arbitrary." *Id.*

Accordingly, the Court imposes *per diem* sanctions of $2,000.00 to accrue daily beginning ten (10) days from the date of this Memorandum-Decision and Order until Defendants have complied in full with this Court's February 13, 2012 Order. *See Perfect Fit*, 673 F.2d at 57; *see also* Dkt. No. 56 at 7 (stating, "the purpose of the contempt order and sanction would be coercive as it does not appear Defendants will otherwise comply with the Court's Order").

### C. Plaintiff's application for attorney's fees and disbursements

In the Second Circuit, attorney's fees are typically awarded based on a "presumptively reasonable fee" calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2007). To determine the reasonable hourly rate, a court considers "what a reasonable, paying client would be willing to pay," *Arbor Hill*, 522 F.3d at 184, and assesses "case-specific considerations," *see McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 420 (2d Cir. 2010). In determining reasonable hourly rates, the following factors are useful:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the

>professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson* [*v. Ga. Highway Express, Inc.*], 488 F.2d [714,] 717-19 [(5th Cir. 1974)]).

Additionally, "[w]here, as here, the services are performed by counsel based in another district, there is a presumption in favor [of] the hourly rates employed in the district in which the reviewing court sits." *Broad. Music, Inc. v. Metro Lounge & Cafe LLC*, No. 5:10-CV-1149, 2013 U.S. Dist. LEXIS 9934, *15 (N.D.N.Y. Jan. 24, 2013) (citation omitted); *see also Bosket v. NCO Fin. Sys., Inc.*, No. 3:11-CV-00678, 2012 U.S. Dist. LEXIS 132239, *7 (N.D.N.Y. Sept. 17, 2012) (stating that, "[o]rdinarily, the relevant rate is the prevailing hourly rate in the community" (citation omitted)). "To overcome th[is] presumption, the applicant 'must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result.'" *Broad. Music, Inc.*, 2013 U.S. Dist. LEXIS 9934, at *15 (quotation omitted).

In this case, Plaintiff requests $21,030.50 in attorney's fees based on New York City hourly rates it paid its attorneys for the 50.5 hours of work they expended in connection with the motion to hold Defendants in contempt and impose sanctions. *See* Dkt. No. 59 at ¶ 4. Specifically, Plaintiff's counsel included John J. Sullivan, Esq., an experienced partner; David R. Michaeli, Esq. a third-year associate; and Constance M. Rincon, a senior paralegal from Hogan Lovells US LLP. *See id.* at ¶¶ 4, 8, 13-14.

After carefully considering the relevant factors, reviewing Plaintiff's submissions, and based on the Court's experience and knowledge of billing rates attorneys in the Northern District of New York customarily charge, the Court concludes that the reasonable hourly rates in this

District are $250.00 for an experienced attorney, $150.00 for a junior associate, and $80.00 for a paralegal.[1]  *See e.g.*, *Jimico Enters., Inc. v. Lehigh Gas Corp.*, No. 1:07-CV-0578, 2011 U.S. Dist. LEXIS 112514, *37 (N.D.N.Y. Sept. 30, 2011) (finding "that a reasonable hourly rate for paralegal work in this district is $80" (citing *Van Echaute v. Law Office of Thomas Landis, Esq.*, 09-CV-1071, 2011 U.S. Dist. LEXIS 34463, 2011 WL 1302195, at *4 (N.D.N.Y. Mar. 31, 2011) (stating that "[t]he paralegals referenced in plaintiff's billing records will be billed at $80 per hour in accordance with the Northern District of New York's lodestar figure"))); *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 197 (N.D.N.Y. 2008) (awarding attorney's fees at an hourly rate of $250 to a local attorney (citations omitted)); *Doe v. Kaiser*, No. 6:06-CV-1045, 2007 U.S. Dist. LEXIS 49647, *31-*32 (N.D.N.Y. July 9, 2007) (calculating attorney's fees at an hourly rate of $250 based on consideration of what a reasonable client of the Syracuse, New York, community would pay and the experience of the attorney).  Additionally, after reviewing the time records Plaintiff submitted, which show the date, the hours, and the nature of the work counsel performed, the Court finds that Plaintiff's attorneys reasonably billed a total of 50.5 hours for the work that Mr. Sullivan (13.4), Mr. Michaeli (34.8), and Ms. Rincon (2.3) performed.  *See* Dkt. No. 59 at ¶ 5; *see also New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (stating that a court determines the hours reasonably expended by reviewing contemporaneous time records that show "for each attorney,

---

[1] The Court declines to grant Plaintiff out-of-district hourly rates because it is not convinced that, under the circumstances, "a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009).  Although the Court recognizes Mr. Sullivan's expertise and experience in representing motor vehicle manufacturers and distributors in dealer disputes and litigation nationwide, *see* Dkt. No. 59 at ¶¶ 9-11, it is not persuaded that Mr. Sullivan's specialized expertise helped Plaintiff win its motion to hold Defendants in contempt and impose sanctions.  "To the contrary, the issue of [contempt and sanctions is] relatively straightforward[.]"  *Jimico Enters., Inc. v. Lehigh Gas Corp.*, No. 1:07-CV-0578, 2011 U.S. Dist. LEXIS 112514, *27 (N.D.N.Y. Sept. 30, 2011).

the date, the hours expended, and the nature of the work done").  For all these reasons, the Court awards Plaintiff a total of **$8,754.00** in attorney's fees, calculated as follows:

| Attorney | Hours | Hourly Rate | Total |
| --- | --- | --- | --- |
| John J. Sullivan, Esq. | 13.4 | $250.00 | $3,350.00 |
| David R. Michaeli, Esq. | 34.8 | $150.00 | $5,220.00 |
| Constance M. Rincon | 2.3 | $80.00 | $184.00 |
| TOTAL | 50.5 | | **$8,754.00** |

Finally, the Court awards Plaintiff **$485.32** in reasonable disbursements for counsels' Westlaw research.

Accordingly, the Court awards Plaintiff a total of **$9,239.32** in attorney's fees and disbursements.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to strike the counterclaims is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion to hold Defendants in contempt and impose *per diem* sanctions is **GRANTED**; and the Court further

**ORDERS** that Defendants are sanctioned $2,00.00 per day beginning ten (10) days from the date of this Memorandum-Decision and Order until they have complied in full with this Court's Order dated February 13, 2012; and the Court further

    **ORDERS** that Defendants shall pay Plaintiff **$9,239.32** in attorney's fees and disbursements incurred in connection with its motion to hold Defendants in contempt and impose sanctions; and the Court further

    **ORDERS** that this matter is referred to Magistrate Judge Baxter for all further pretrial matters.

**IT IS SO ORDERED**.

Dated: March 26, 2013
       Syracuse, New York

                                            Frederick J. Scullin, Jr.
                                            Senior United States District Court Judge